James **HENDERSHOT** and Tom Rotz, Barbara Hargis and Teresa Neal, On Behalf of Themselves and All Others Similarly Situated, Appellants–Plaintiffs,

v.

James P. **CAREY,** Mayor of Muncie, Muncie Common Council, John Doe, Chief Executive Officer of Muncie Sanitary District, and The Board of Sanitary Commissioners, Appellees–Defendants.

No. 27A02–9202–CV–77.

Court of Appeals of Indiana, Second District.

July 7, 1993.

Harry A. Wilson, Jr., Wilson Kehoe & Winingham, Indianapolis, for appellants-plaintiffs.

Steven D. Murphy, Todd A. Mikesell, De-Fur, Voran, Hanley, Radcliff & Reed, Muncie, for appellees-defendants.

SULLIVAN, Judge.

James Hendershot, Tom Rotz, Barbara Hargis, and Teresa Neal, as representative plaintiffs in a class action on behalf of the employees (the class will hereinafter collectively be referred to as the "Employees") of the City of Muncie and of the Muncie Sanitary District (hereinafter collectively referred to as the "City"), appeal from the trial court's judgment that the City did not wrongfully withhold wages from the Employees in 1988.

We affirm in part, reverse in part, and remand for further proceedings.

Upon appeal, the Employees present five issues for our review, which we consolidate and restate.

I. Whether the City violated the Indiana Constitution's requirement of just compensation for work performed when it failed to pay the Employees their full pay checks on December 30, 1988;

II. whether the trial court erred in determining that the City did not violate I.C. 22–2–5–1 when it failed to pay some Employees on December 30, 1988;

III. whether the trial court erred in determining that the Employees' compensation was annual, as opposed to hourly;

IV. whether the City breached the employment contract when it failed to pay some of the Employees on December 30, 1988?

The underlying facts are not in dispute. The procedure for setting salaries for City employees is prescribed by statute. For the year 1988, pursuant to the statutes then in force, I.C. 36–4–7–2 (Burns Code Ed.1981),[1] and I.C. 36–4–7–3 (Burns Code Ed.1981),[2] the Mayor and the Board of Commissioners submitted proposals containing suggested maximum salaries and hourly wages for employees of the City of Muncie and the Muncie Sanitary District, respectively. These proposals were ap-

---

1. Omitting statutory citations, I.C. 36–4–7–2 provides:

   "(a) The city legislative body shall, by ordinance, fix the annual compensation of all elected city officers. The ordinance must be published ... with the first publication at least thirty (30) days before final passage by the legislative body.

   (b) The compensation of an elected city officer may not be changed in the year for which it is fixed, nor may it be reduced below the amount fixed for the year 1980."

2. The pertinent parts of I.C. 36–4–7–3 provide:

   "(b) Subject to the approval of the city legislative body, the city executive shall fix the compensation of each appointive officer, deputy, and other employee of the city. The legislative body may reduce but may not increase any compensation fixed by the executive. Compensation must be fixed under this section before August 2 of each year for the ensuing budget year.

   (c) Compensation fixed under this section may not be increased during the budget year for which it is fixed, but may be reduced by the executive."

proved in July, 1987 by the Common Council for the City of Muncie. In August, 1987, the Mayor proposed a budget to the Common Council appropriating funds for projected 1988 expenditures. In such cases, the Common Council may either approve the budget as submitted, or may reduce the amount, but may not increase appropriations. In the instant case, the Common Counsel approved the budget.

The above process resulted in the enactment of Salary Ordinance Numbers 20–87, 21–87, and 22–87. Ordinance 20–87 fixed the 1988 maximum compensation for Muncie elected officials. Ordinance 21–87 fixed the 1988 maximum compensation for Sanitary District employees working in positions classified in labor grades 1 through 134. Ordinance 22–87 fixed the 1988 maximum compensation for all appointed officials and employees of the City of Muncie; these positions were classified in labor grades 2 through 140. After the above ordinances were approved, they were sent to the Payroll Office, where amounts representing annual salaries were divided by twenty-six in order to determine the amount of compensation each salaried employee would receive per biweekly pay period.

In either July or August of 1988, the City became aware that there were in fact 27 paydays in 1988, rather than the normal 26.[3] The City determined that its miscalculation as to the number of pay periods would create a budgetary shortfall. At the time that the error was discovered, each employee had yet to receive his or her last nine of twenty-six paychecks. Based upon the Payroll Department's original calculations, each salaried employee's check represented $1/26$ of that employee's annual salary. Obviously, a shortfall would occur if each such employee was issued a twenty-seventh check in the same amount as the first twenty-six.

The same shortfall would occur with regard to hourly employees, although for a

different reason. In order to prepare its budget and appropriate an amount sufficient to fund proposed expenditures, it would be necessary for the City to calculate the amount it would pay an hourly employee during the entire year. This it could do by multiplying the projected number of hours worked per week times the number of weeks worked, which would then be multiplied by the hourly rate. The City's budgetary shortfall *vis a vis* hourly employees would equal the amount expended upon the twenty-seventh pay check.

After discovering the problem (i.e., that it had divided salaried employees' salaries by twenty-six paychecks instead of twenty-seven, and that it had forecast only twenty-six pay periods instead of twenty-seven for hourly employees, and thus had appropriated insufficient funds to pay the twenty-seventh paycheck), the City met with the State Board of Accounts to discuss its options and was told that the City could not pay more than had originally been appropriated in the salary ordinance. In other words, the City could not simply appropriate extra funds with which to issue a twenty-seventh check.

Seemingly unable to pay the Employees the full amount of a twenty-seventh check, the City offered each employee a choice between two options. Under the first option, the employee would receive nine paychecks in the same amount that he or she had received until that point in the year, but would not receive a paycheck on December 30, 1988, the twenty-seventh and final payday of the year. Under the second option, the employee would receive the same amount of money by year end, but that amount would be spread out over ten checks instead of nine; in other words, each of the ten checks would be for $9/10$ of the amount that the employee had received on the first sixteen checks of 1988. Under either option, the annual compensation received would be the same. The Employees

---

**3.** In its brief, the City explains the anomaly thus:

"Each non-leap year contains 52 weeks and one additional day. Each leap year is 52 weeks long, with two additional days. As a result, every 11 years, the calendar year will contain an extra bi-weekly pay period when a bi-weekly pay schedule is used to distribute an annual salary." [Record citations omitted] Brief of Appellee at 5.

brought this class action, claiming that the City had wrongfully withheld the last two-weeks salary.

■ In the instant case, the Employees appeal a negative judgment. A negative judgement may only be challenged upon appeal as contrary to law. *Sherk v. Indiana Waste Systems, Inc.* (1986) 4th Dist.Ind.App., 495 N.E.2d 815, 817, *trans. denied.* "A judgment is contrary to law if the evidence is without conflict and points unerringly to a conclusion different from that reached by the trial court." *Communications Workers of America, Locals 5800, 5714 v. Beckman* (1989) 4th Dist.Ind. App., 540 N.E.2d 117, 127.

### I. *Constitutional Claim*

The Employees first contend that "application of I.C. 36–4–7 to allow defendants to avoid paying plaintiffs amounts due and owing under their hourly wage contract would be a violation of the Indiana Constitution, Article I, §§ 21, 24, and 37." Brief of Appellants at 36. Indiana Code 36–4–7 contains guidelines to be followed by municipalities when setting budgets.

■ When a statute is challenged as unconstitutional, we first determine whether the matter may be disposed of upon non-constitutional grounds. *State of Indiana, Indiana State Police, and Indiana Department of Highways v. Rendleman* (1992) Ind., 603 N.E.2d 1333. In denying the appellants' claim, the trial court rendered a negative decision against the entire class as originally certified. However, our resolution of the issues presented herein, *infra*, divides the entire class into two subclasses. To foreshadow, we hold that the trial court properly denied the claims of one subclass, but that the other subclass should have prevailed. Obviously, the constitutionality question is moot as to the subclass which prevails. As to the other subclass, we hold that the trial court properly denied those claims upon the ground that members of that group received all of the compensation to which they were entitled. *See* Issue III, *infra.* Thus, we need not address the constitutional question.

### II. *Biweekly Wage Statute*

■ The Employees next claim that the City violated I.C. 22–2–5–1 (Burns Code Ed.1992) by refusing to issue the December 30, 1988 paycheck.[4] This provision reads, in pertinent part: "(a) Every person, firm, corporation, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semi-monthly or bi-weekly, if requested, the amount due the employee." Those employees who chose the second option would not have received a paycheck between December 16, 1988 and January 13, 1989, a period of four weeks. Thus, the Employees claim, the City was in violation of I.C. 22–2–5–1 because it went more than two weeks without issuing paychecks.

Indiana Code 22–2–5–1 does not confer automatic liability upon employers whenever a period of longer than two weeks elapses between paychecks. Rather, the statute provides that in order to place liability upon an employer for failure to issue paychecks at least every two weeks, an employee must first submit a request to that effect. *See Flex Let Corp. v. Vogel* (1962) 134 Ind.App. 495, 186 N.E.2d 696. Put another way, an employer must pay an employee at least every two weeks *if the employee so requests.* In the instant case, the City expressly offered to pay the Employees on December 30, albeit a reduced amount, an offer which some employees apparently rejected. Those employees cannot now charge the City with responsibility for a choice that some employees made, i.e., to go four weeks rather than two before receiving a paycheck. It is irrelevant that the amount of the checks was in dispute; the statute addresses the frequency with which an employer must pay its employees, not the amount that it must pay. In sum-

---

4. As stated previously, of the two options offered to the Employees regarding compensation after the error was discovered, only the second resulted in the employee not receiving a December 30 paycheck. Presumably, then, this argument pertains only to those members of the class who chose the second option and received nine checks for the greater amount.

mary, the City did not violate I.C. 22–2–5–1 when some employees chose not to receive a paycheck on December 30.

### III. *Hourly v. Salaried*

■ The several issues presented in the instant case are pertinent insofar as they address what we deem to be the ultimate question presented: were the Employees compensated for the work they performed between December 11, 1988 and December 24, 1988? The City argues that all of the Employees were salaried employees; that is, their compensation is computed upon an annual basis. In such case, a paycheck reflects an amount arrived at by dividing the total annual compensation by the number of pay periods. It naturally follows that the appropriate means for determining whether a salaried employee received his or her entire salary would be to compare the amount of the agreed-upon salary with the amount of salary actually received at year end, regardless of the amounts of the individual paychecks.

The Employees argue, on the other hand, that all of the Employees were hired as hourly employees. In such case, a paycheck reflects an amount arrived at by multiplying the number of hours worked in the relevant pay period by the hourly wage, without regard to the total amount

received by year's end. The trial court's findings and conclusion reflect that it agreed with the City:

### "CONCLUSIONS OF LAW

1. Employees of the City of Muncie and the Muncie Sanitary District were compensated according to City Ordinances on an annual basis for the pertinent years of 1987 and 1988.[5]

2. By statute, the amount of compensation an employee may receive is fixed and cannot be increased for the fiscal year. IND.CODE # 36–4–7–2(b) and # 36–4–7–3(c).

3. The City of Muncie paid the entire annual salaries and wages which were due and owing to Jim Hendershot, Barbara Hargis, Teresa Neal, Tom Rotz and all other class members for 1987 and 1988.

4. The Plaintiffs and class members received all wages to which they were entitled for 1988; therefore, no violation of I.C. # 22–2–5–1 has occurred." Record at 274.

We conclude that the parties have identified the critical inquiry: were the Employees hourly or salaried?[6] That question, in

5. Incorporated into the parties' arguments is a discussion of the fact that because a paycheck represents pay for the preceding two weeks, the first paycheck that the Employees received in 1988 was for work actually performed in the last two weeks of 1987. This argument was offered, among other reasons, to refute the City's argument that salaried employees received in 1988 compensation for all worked performed in 1988. That is, the Employees argue that even if the amount of compensation reflected upon an employee's 1988 W–2 matches the amount of that employee's 1988 salary, the employee was nevertheless underpaid because two weeks worth of pay on the 1988 W–2 was for work performed the prior year. Although creative, the argument is without merit.

Any argument that includes the fact that the first paycheck in 1988 was for work performed in 1987 must also incorporate the fact that the first paycheck in 1989 was for work performed in 1988. Thus, an employee's compensation for work performed in 1988 must be determined by considering at least a portion of the first paycheck received in 1989. In this sense, that part of the Employees' argument which may have been validated at the beginning of 1988, would have been invalidated at the beginning of 1989.

6. As to Issue IV, the employees also contend that a valid employment contract existed between the parties in 1988, and that the City breached the contract by failing to pay the disputed amount to the Employees. The Employees further contend that the trial court failed to address this argument inasmuch as its Findings and Conclusions did not refer to an employment contract.

The Employees implicitly acknowledge that there was no written contact between the City and its employees, but nevertheless argue that an employment contract arose by operation of law by virtue of: 1) the City's offer of employment to each class member; 2) each employee's acceptance of the City's offer; and 3) the employee's subsequent job performance and acceptance of payment. Assuming *arguendo* that this is true, one of the missing terms of such a contract which the court must supply is that of compensation. Included in that determination is the question of whether the employees were hourly or salaried. In essence, this theory of recovery is coterminous with other arguments presented by the Employees; those arguments will either succeed or fail based upon the same grounds. Thus, this argument does no more

turn, requires an examination of the class herein designated as "the Employees".

Indiana Trial Rule 23(A) provides that a class action may be maintained by one or more members of a class only when: (1) the members are so numerous that joinder of all members is impractical; (2) there exist questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the entire class; and (4) the representatives will fairly and adequately protect the interests of the class. The trial court determined that the Employees had met their burden of establishing that the instant action could be maintained as a class action. *See Perfect Circle Corp. v. Case* (1983) 1st Dist.Ind.App., 444 N.E.2d 1211, 1213. Accordingly, the trial court certified the following class: "All employees of the City of Muncie and the Muncie Sanitary District, who performed any work between December 11, 1988 and December 26, 1988." Record at 76. Ultimately, the trial court concluded that the entire class failed in its claim for damages. We are persuaded, however, that denial of relief to *all* employees of the City was too wide-sweeping.

The record reveals that each position of employment under the City was assigned a numerical labor grade designation, from 1 through 144. Wages and salaries for each labor grade were set annually by ordinance. Compensation for labor grades 1 through 86 was designated in terms of "maximum salary", ranging in the year 1988 from a "maximum salary" of $29,563.10 for labor grade 1, to $2,000.00 for labor grade 86. However, the ordinance sets the compensation amounts for labor grades 87 through 144 differently. Labor grade 87 is paid "$13.13 per day". Labor grades 100 through 144 are listed in the following manner:

| "LABOR GRADE | REGULAR | OVERTIME |
| --- | --- | --- |
| 100 | $9.65 | 14.48 |
| 102 | 8.97 | 13.45 |
| 103 | 8.87 | 13.31 |
| 104 | 8.75 | 13.12 |
| 105 | 8.69 | 13.03 |
| * * * * * | | |
| 140 | 4.56 | 6.84 |
| 141 | 4.50 | 6.75 |
| 142 | 4.33 | 6.49 |
| 143 | 4.00 | 6.00 |
| 144 | 3.35 | 5.02" |

Record at 669.

---

The trial court determined that all of the employees were compensated on an annual basis, which for purposes of the instant appeal means they were salaried employees. Based upon that determination, the court compared the amount of compensation reflected upon several employees' W–2 forms with the amount of compensation appropriated in the 1988 salary ordinances. The court then concluded that the City did not underpay the Employees. We therefore first must determine whether the trial court correctly determined that the Employees' compensation was computed on an annual basis.

In the instant case, the Employees offer the following as evidence that their pay rate was hourly.

1. Muncie Salary Ordinance No. 255–76, a 1976 City ordinance, declared that employees of the City were hourly employees and should be treated as such.

than add an additional theory upon which the Employees may recover, and need not be addressed separately.

2. Certain members of the class, including representative plaintiffs Hendershot, Hargis and Neal, testified that it was their understanding that they were hourly employees.[7]

3. Plaintiffs Hargis and Neal were not paid for time off, as evidenced by certain time cards which showed that their pay was reduced proportionately when time was missed at work.

4. The Employees were required either to fill out a time card or punch a time clock, and to submit the time card in order to receive their pay.

5. The parties stipulated that some employees were hourly employees, a fact supported by the City's practice of placing an "H" for "hourly" on the payroll after the name of some employees (while others had an "S" for "salary" after their names), and by references in the Employee Handbook to some employees as salaried and others as hourly.

6. The parties stipulated that "[p]ursuant to said biweekly pay policy, where time cards are compiled and turned in biweekly for each City of Muncie employee (except City Council members), when said employees were paid on January 1, 1988, said payment was disbursed following the submission of time cards for work completed during December 13, 1987, to December 26, 1987." Record at 113.

The Employees contend that this indicates the City's admission that pay received is for work completed during a specific two-week interval.

7. The Employees' expert witness testified that all employees were paid at an hourly rate.

The City, on the other hand, argues that the trial court's ruling was correct for two interrelated reasons. First, the City notes that each of the four representative plaintiffs was employed in a labor grade designated by a number less than "87". As noted above, compensation for such positions was termed in the 1988 salary ordinance as "annual salary". The City then compares the amount listed in the salary ordinance with the amount of compensation actually received as reflected on each of the representative plaintiffs' 1988 W–2 forms, showing that the two figures were virtually the same. Thus, the City argues, the four representative plaintiffs were salaried employees.

Second, the City argues that in a class action, "[t]he rights of the Employees to recover is contingent upon the right of action of the Representative Plaintiffs. [Citation omitted.] If the Representative Plaintiffs do not succeed in their case, then the entire class action must also fail." Brief of Appellee at 25. In essence, the City argues that if none of the four representative plaintiffs prevail (i.e., if none are determined to be "hourly employees"), then all members of the class fail.

The parties offer no Indiana cases which set forth specific criteria by which courts will determine whether an employee is hourly or salaried, nor does our research reveal any. Such determination is necessarily fact-sensitive, and is made upon evaluation of the totality of circumstances including, but not limited to, employment contract provisions, method and time of payment, relation of time worked to pay received, applicable regulations and ordinances, and express classification. *Cf. Gurnik v. Lee* (1992) 2d Dist.Ind.App., 587 N.E.2d 706. The following discussion centers upon three of the aforementioned factors, inasmuch as we conclude that, in *this* case, these factors are dispositive.

## A. EXPRESS CLASSIFICATION

We address first the official classification of the various positions as hourly or

---

7. Although the subjective belief of a party is occasionally relevant, such is not the case here. Teresa Neal testified that she was told in 1983 that the position for which she was being hired paid in excess of $6.00 per hour. Barbara Hargis testified that when hired she also was told she would be paid in excess of $6.00 per hour.

In both cases, the employee's subjective belief was more or less without foundation; that is, it was not based upon criteria of legal significance. Accordingly we need not address this "evidence" offered in support of the Employees' position.

salaried. The Employees note that a 1976 ordinance declared that "the salary positions are hereby changed to hourly wage positions." Record at 620. We reiterate that the way in which a position is officially classified is but one factor to consider in determining whether it is hourly or salaried. We note also that even if the classifications in the ordinance were significant, the 1976 ordinance was to be in effect for only one year. The controlling statute, I.C. 36–4–7–3, dictates that compensation be fixed each year for the ensuing budget year. Moreover, even were the ordinance deemed in effect as of 1988, the import of the quoted language in the instant controversy is not entirely clear. Following that language is a list containing thirty-seven job titles and the hourly wage assigned to each. Without question, the current city payroll reflects more than those thirty-seven different employment positions. The question is thus raised whether the positions not listed in the 1976 ordinance are also to be classified as hourly.

There are even more direct ambiguities. A cursory examination of the positions listed in the 1976 ordinance and of the positions listed by labor grade in the 1987 ordinance reveals that there may be some positions designated "hourly wage" in No. 255–76 for which the 1987 ordinance listed compensation in terms of "annual salary". Thus, even assuming *arguendo* that the classifications reflected in Ordinance No. 255–76 were at that time intended to extend beyond 1977, there apparently exist directly conflicting classifications in the two ordinances.

Other evidence indicates that different sources grouped different employees in *both* classifications—some were hourly and others were salaried, which tends to refute the parties' argument that all employees were one or all were the other. For instance, the City payroll listing designates each City employee as either "H" or "S". In the City of Muncie Employee Handbook some provisions apply to "all full-time employees" while others apply to "all full-time hourly employees". It may reasonably be inferred that the former includes both hourly *and* salaried employees, further indication that the City employed both hourly and salaried employees.

It therefore is clear that certain employees in particular labor grades were classified as hourly and others were classified as salaried. In several instances, it appears that the same employee was classified as hourly in one source, and as salaried in another. For instance, Barbara Hargis worked in a position classified as "labor grade 73" with compensation listed in Ordinance No. 21–87 as $14,678.00 ("MAXIMUM SALARY").[8] Yet, in a computer-generated "Payroll Listing" dated September 21, 1988, an "H" appears beside Hargis's name; presumably "H" stands for "hourly". Neither the record nor the appellate briefs explain the nature or origin of the list. The list was one of several entered into evidence by stipulation of the parties prior to conclusion of trial. The only explanatory comment was that "the Exhibits speak for themselves." Record at 827. Unfortunately, the list tells this court nothing which aids in determining its importance with respect to the crucial inquiry. Its form suggests that it was generated by the payroll department, in which case it is of some relevance. If, on the other hand, it is a list compiled by either party or an outside agency in conjunction with the instant lawsuit, it is of no value.

It appears, then, that certain employees were designated as salaried both in the ordinances and in the payroll listing. Certain other positions were listed both as "hourly" on the payroll listing and as "salaried" in the ordinances. Still other positions were listed as "hourly" in both

8. In its appellate brief, the City identifies Barbara Hargis's position as being classified in labor grade 73, with an annual salary of $13,-823.00. In fact, that is the salary listed for labor grade 79. Hargis testified that she worked as a police dispatcher, which according to ordinance No. 22–87 is classified as labor grade 73. The compensation listed in 21–87 for labor grade 73 employees is $14,678.00. We assume that the City simply assigned the wrong salary to Hargis's position as police dispatcher. Be that as it may, it is immaterial for our purposes here whether Hargis was employed in a labor grade 73 position or a labor grade 79 position.

sources. In summary, the City employed *both* salaried and hourly employees.

## B. TIME CARDS AND BIWEEKLY PAYCHECKS

The Employees introduced evidence that they were required either to fill out time cards, or punch a time clock and then to submit the time card in order to receive their pay. (R. 716)

The mere fact that an employee is required to account for his or her time does not necessarily indicate, as the Employees contend, that the employee is hourly. To the contrary, when entering an employee-employer relationship, it is customary to communicate to the employee the requirements of the job. Such requirements normally include the number of hours an employee is expected to work per day or week. Even most salaried employees are expected to work a basic number of hours per week. In such cases, time cards merely serve to verify that the employee is present on the job as anticipated. Thus, the fact that all City employees were required to keep and submit time cards does not indicate that they therefore were hourly employees.

The parties stipulated that the Employees were paid biweekly:

"Pursuant to said biweekly pay policy, where time cards are compiled and turned in biweekly for each City of Muncie employee (except City Council members), when said employees were paid on January 1, 1988, said payment was disbursed following the submission of time cards for work completed during December 13, 1987, to December 26, 1987." Record at 113.

The Employees contend that this indicates an admission by the City that pay received is for work completed during a specific two-week interval. Contrary to the Employees' contention, the fact that employees were paid on a biweekly basis does not indicate that they were hourly employees. Were it so, using the same rationale, salaried (i.e., annual) employees would be paid only once a year. Biweekly salary and wage payments, aside from being required by law if requested, are for the benefit and convenience of the employee and are not a function of an employee's classification as hourly or salaried. Thus, the fact that the Employees were paid biweekly does not aid in the determination of their compensation classification.

## C. CORRELATION BETWEEN HOURS AND PAY

Hendershot was employed as engineering director, a labor grade 4 position. His annual compensation was listed as "28,-627.00 Annually" in Ordinance 21–87. On the payroll listing, there was an "S" by his name. In fact, Hendershot testified that he was a salaried employee. He also testified that although he filled out time cards, he occasionally worked more than forty hours in a week but was not compensated for the overtime. He further testified that when filling out his time card, he recorded eighty hours of work even if he had, in fact, spent less time than that on the job. Thus, for Hendershot, a salaried employee by admission and classification, the number of hours worked during a particular pay period did not affect the amount of money received in that paycheck. Therefore the evidence as to Hendershot's status is not in conflict—he was a salaried employee.

Representative plaintiff Neal was required to punch a time clock upon arrival and departure from work. At the end of the pay period, her supervisor would review her time cards and fill in another time card to be turned in for payroll purposes. The second card would reflect the number of hours for which she was to be paid. These hours included hours worked, sick days, paid holidays, and personal days.

A review of Neal's time cards reveals that during 1988 she took off a total of twenty personal days, was absent five days for a funeral, took an authorized leave of absence, and was granted seven days extended sick leave. A summary of her paychecks reveals that she was paid for eighty hours of work every pay period during

1988. The Employee Handbook reveals that, for the most part, the aforementioned time away from work was properly payable as part of the employee benefit package.[9] We are thus left to speculate whether Neal would have been paid for absence not covered by the benefit package. Nevertheless, although the evidence was conflicting, the trial court's conclusion that Neal was salaried is reasonable in view of the fact that there was some evidence susceptible to that interpretation.

■ However, we conclude that there were certain employees of the City that were, in fact, hourly employees. For example, Vicky Sayre was employed during the relevant time period as a deputy clerk, a labor grade 134 position. Her compensation was listed as hourly in the appropriate ordinance, there was an "H" beside her name on the payroll listing, and she was paid for overtime. There is absolutely no countervailing evidence indicating that Sayre was a salaried employee. The same is true of Rita Sayre, who worked as a clerk, a labor grade 138 position. Accordingly, the trial court's conclusion that Rita and Vicky Sayre were salaried employees is erroneous. We hold that employees whose compensation is listed in the relevant salary ordinance as hourly, which includes those positions classified in labor grades 100–144, *and* who have an "H" by their name on the payroll listing, are hourly employees and should prevail in their claim against the City.

## IV. *Creation of Subclasses*

Our holding today creates subclasses within the original class certified by the trial court. That is, the class of all employees of the City has been divided into salaried employees of the City and hourly employees of the City. Indiana Trial Rule 23(C)(4) is designed for use when, as here, members of a class have divergent interests. *Dunn v. Jenkins* (1978) 268 Ind. 478, 377 N.E.2d 868, 871. Trial Rule 23(C)(4) provides:

"(4) When appropriate:

(a) an action may be brought or maintained as a class action with respect to particular issues; or

(b) *a class may be divided into subclasses and each subclass treated as a class,* and the provisions of this rule shall then be construed and applied accordingly." [Emphasis supplied.]

This rule permits a trial court to divide a certified class into subclasses, and to treat each subclass as a separate class. *CSX Transportation, Inc. v. Rabold* (1992) 4th Dist.Ind.App., 593 N.E.2d 1277, 1279, *trans. denied.* In the instant case, therefore, the trial court must determine each individual member's right to recovery based upon membership in one of the two subclasses. *See id.*

We are aware that a superficial reading of I.C. 36–4–7–8 (Burns Code Ed.1981) indicates the presence of possible statutory impediments to appropriating current additional funds to pay the 1988 shortfall which will come about as a result of payment of claims in this cause. We do not believe that I.C. 36–4–7–8 was enacted to allow municipalities to under-fund obligations it has created and then escape its obligations by virtue of such statutory provisions. Be that as it may, we do not herein decide what options may be available to the City regarding payment of an award of damages.

---

9. The Handbook states that only twelve personal/sick days per year will be paid (Neal was paid for twenty), and that unused personal/sick days will not be accumulated from year to year. However, it also states "personal/sick days not used at the end of the year will be added to the extended sick bank." Record at 1248, p. 12. Whether the eight extra personal days taken by Neal during 1988 were paid pursuant to the "sick bank" proviso is unclear.

The judgment of the trial court is reversed as to those employees determined upon remand to be hourly employees and this cause is remanded to the trial court with instructions to make such determination consistent with this opinion. The judgment is affirmed as to all others.

Affirmed in part, reversed in part, and remanded.

FRIEDLANDER and BAKER, JJ., concur.