

**FILED**

Dec 23 2015, 10:18 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Douglas A. Mulvaney | John W. Davis, Jr. |
| Stutsman & Mulvaney | Davis & Roose |
| Elkhart, Indiana | Goshen, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eugene J. Topolski, | December 23, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 20A05-1502-CC-82 |
| v. | Appeal from the Elkhart Superior Court |
| Bonnie Egan, | The Honorable George W. Biddlecome, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 20D03-1207-CC-995 |

**Mathias, Judge.**

[1] Bonnie Egan ("Egan") filed a complaint in Elkhart Superior Court against Eugene Topolski ("Topolski") alleging that he owed her back pay, liquidated damages, and attorney's fees under Indiana Code sections 22-2-5-1 and 2 for unpaid wages earned while working as Topolski's legal assistant. The trial court entered a judgment in favor of Egan for $85,104.14. Topolski now appeals and presents two issues for our review, which we restate as whether sufficient

evidence supports the trial court's calculation of unpaid back pay Topolski owed to Egan and whether the trial court correctly awarded liquidated damages and attorney's fees to Egan under Indiana Code section 22-2-5-2.

[2] We affirm.

## Facts and Procedural History

[3] Topolski is an attorney and has practiced law in Indiana since 1994. He operates a solo general law practice in Elkhart, Indiana, focusing primarily on worker's compensation. Beginning in early November 2005, Topolski employed Egan as a legal assistant. During Egan's initial interview, Topolski told her that the position was four days a week with the office open Monday through Thursday and closed on Fridays. He expressed to her that he could not compete with the benefits of a large law firm but would pay her forty hours per week so she could count on full-time pay. Before Egan accepted the offer, Topolski also indicated to her that she could take vacation time whenever she needed. He told Egan that his main concern was that the work be completed. Egan was also given remote access to the office, so she could work from home as needed.

[4] Throughout the course of her employment with Topolski, Egan was paid a set amount of money on a weekly basis, regardless of number of hours worked. Neither Topolski or Egan ever kept time records documenting her hours. Starting in November 2005, Egan was paid thirteen dollars per hour or $520 gross per week. In January 2007, Egan received a raise to $560 per week and another raise in January 2008 to $600 per week. Between January 1, 2010 and

April 12, 2012[1] Egan's expected pay was fifteen dollars per hour or $600 gross per week. However, due to the general economic downturn during this period of time, Topolski did not pay Egan every week as was originally agreed. Although she expected to receive fifty-two checks each year, Egan received forty-nine paychecks in 2010; twenty-seven paychecks in 2011; and seven paychecks in 2012.[2] Topolski completely stopped paying Egan from August 2011 until January 2012. Wage payments resumed in January 2012 and were in the amount of $600 gross per week.

[5] In August 2011, Topolski also reduced Egan's work hours from four days per week to two days per week without an agreement on how much Egan would be paid. She believed that she would still be paid $600 per week, especially because the paychecks resumed in January 2012 in the amount of $600 before withholding. Even though Topolski resumed paying Egan, she still was not receiving a paycheck every week and never received the unpaid wages from 2010 and 2011. *See* Plaintiff's Exhibit M. Egan told Topolski on numerous occasions that she needed to be paid for full-time work or let go so she could collect unemployment benefits. Tr. p. 53

[6] On April 5, 2012, Egan had a conversation with Topolski about receiving a job offer from another law firm and her need to be paid. Topolski acknowledged

[1] The trial court order states that this was the time period when Egan alleged that Topolski failed to pay her, but Egan's complaint lists the time period as January 1, 2011, to April 10, 2012. *See* Appellant's App. p. 22.

[2] Egan resigned as Topolski's legal assistant on April 10, 2012, working only fifteen weeks in 2012.

that he owed Egan back pay but expressed that he needed "a little bit of time to get that money." Tr. p. 57. After determining that she could not keep working for Topolski without being paid, Egan accepted a legal assistant position at another law firm and submitted her resignation letter to Topolski on April 10, 2012. In her resignation letter, Egan requested her unpaid wages:

> [P]er our discussion last week, you can no longer assure me of regular work or a paycheck. Nor have you been able to make it possible for me to be laid off and collect my full unemployment benefits based on my salary with you of $600.00 per week.
>
> ***
>
> As we also discussed last week, as of April 1, 2012, I am owed a total of 40 weeks salary; 34 weeks from 2011 and 6 weeks from 1st quarter of 2012. This is an amount of $24,000.00.[3] You have assured me that you will reimburse me for this past-due salary. It is my understanding that you will make sure all withholdings are taken out and paid to the appropriate state and federal agencies. You told me you needed some time to sell some stock or make other arrangements to have the funds to pay the $24,000.00. I am willing to give you until June 1, 2012 to accomplish this.

Plaintiff's Exhibit N.

[7] Egan encountered Topolski again on June 4, 2012 after passing by his law office with her grandson. She had still not received payment, and Topolski told her

---

[3] Parties disputed the amount of unpaid wages due to Egan. The trial court adopted the amount of $21,600 that was asserted in Egan's proposed findings of fact and conclusions of law.

again that he did not have the money but should be able to get it to her by the middle of the month. Tr. p. 68. Egan did not receive the promised payment and therefore filed a complaint in Elkhart Superior Court on July 26, 2012, against Topolski seeking unpaid back pay, liquidated damages, and attorney's fees under Indiana Code sections 22-2-5-1 and 2. A bench trial was held on September 30, 2014, and the court ordered both parties to submit proposed findings of fact and conclusions of law. On January 27, 2015, the trial court entered a judgment in favor of Egan for $85,104.14, which included unpaid back pay, liquidated damages, and attorney's fees. Topolski now appeals.

## I. Sufficiency

[8] Topolski argues that the trial court erred when it determined that Egan was a salaried employee and as such incorrectly calculated the amount of unpaid wages due. When we review the sufficiency of evidence in a civil case, we will decide whether substantial evidence of probative value supports the judgment. *Jamrosz v. Resource Benefits, Inc.*, 839 N.E.2d 746, 758 (Ind. Ct. App. 2005), *trans. denied*. We neither weigh the evidence nor judge the credibility of witnesses but consider only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom. *Davidson v. Bailey*, 826 N.E.2d 80, 87 (Ind. Ct. App. 2005). We will not set aside the findings or judgment unless clearly erroneous. *Marion Cnty. Auditor v. Sawmill Creek, LLC*, 964 N.E.2d 213, 216 (Ind. 2012). A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* at 217. Legal conclusions are reviewed *de novo*. *Id.*

[9] Topolski concedes that he owes Egan back pay from when she worked as his legal assistant, but he asserts that she was an hourly employee and should be compensated $8,280 instead of $21,600. A determination as to whether an employee is salaried or hourly is necessarily fact-sensitive, and is made based upon evaluation of the totality of the circumstances including, but not limited to, employment contract provisions, method and time of payment, and relation of time worked to pay received. *Hendershot v. Carey*, 616 N.E.2d 412, 418 (Ind. Ct. App. 1993).

[10] The trial court considered that: 1) at the beginning of Egan's employment she worked four days per week and received a pay check for a full forty-hour work week; 2) Egan was authorized to take flexible vacation time and work from home as needed; 3) no actual time records were kept by Topolski or Egan; 4) no agreement existed that explicitly identified how much Egan would be paid; 5) between January 1, 2011 and April 10, 2012 Egan's expected pay was $600 per week regardless of hours worked; and 6) Egan referenced her "salary of $600 per week" in the April 10, 2012 resignation letter and that she was owed $24,000 which Topolski did not dispute at the time. Appellant's App. pp. 16-17. Based on the totality of the circumstances after weighing these factors, the trial court concluded that Egan was a salaried employee.

[11] Topolski's argument that Egan was an hourly employee is a request to re-weigh the evidence and credit his testimony over Egan's testimony, which we will not do. Our court in *Hendershot* emphasized the fact-sensitive nature in determining whether an employee is salaried or hourly and also did not limit the factors

exclusively to those set forth in the test. Here, the trial court listed numerous factors based on evidence presented at trial of Egan's and Topolski's employment relationship that support its legal conclusion that Egan was a salaried employee. After making this determination, the court then calculated Egan's back pay award based on its findings that her salary was $600 per week and she was not compensated for thirty-six weeks while she worked for Topolski. The trial court's findings support its proper application of the *Hendershot* factors in reaching its conclusion that Egan was a salaried employee and its calculation of her compensation as such. Therefore, we will not disturb the trial court's determination on appeal.

## II. Liquidated Damages and Attorney's Fees

[12]     Topolski also argues that the trial court erred in awarding Egan liquidated damages and attorney's fees under Indiana Code section 22-2-5-2. The penalties of Indiana Code section 22-2-5-2 apply if an employer fails to comply with Indiana Code section 22-2-5-1 which provides:

> (a) Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee.

> (b) Payment shall be made for all wages earned to a date not more than ten (10) business days prior to the date of payment. . . However, if an employee voluntarily leaves employment, either permanently or temporarily, the employer shall not be required to pay the employee an amount due the employee until the next

usual and regular day for payment of wages, as established by the employer.

[13]     Under the Indiana Wage Payment Statute, Topolski was required to pay Egan her earnings no later than April 26, 2012, which he failed to do. As a result, Indiana Code section 22-2-5-2 applies which provides:

> Every such person, firm, corporation, limited liability company, or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall be liable to the employee for that amount of wages, and the amount may be recovered in any court having jurisdiction of a suit to recover the amount due to the employee. The court shall order as costs in the case a reasonable fee for the plaintiff's attorney and court costs. In addition, if the court in any such suit determines that the person, firm, corporation, limited liability corporation, or association that failed to pay the employee as provided in section 1 of this chapter was not acting in good faith, the court shall order, as liquidated damages for the failure to pay wages, that the employee be paid an amount equal to two (2) times the amount of wages due the employee.

[14]     Topolski asserts that the Indiana Wage Payment Statute applies only to the frequency of pay, not the amount of pay. Our supreme court found in *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699 (Ind. 2002) that the plain, ordinary, and usual meaning of the statutory phrases "all wages" and "amount due" unambiguously established that the legislature intended the Wage Payment Statute to govern not only the frequency but also the amount the employer must pay its employee, and if the [statute] only governed the frequency, then the employer could avoid the penalty provisions of the statute by simply tendering

$1.00 biweekly or semimonthly regardless of the amount of wages agreed to by the parties. *Id.* at 704. Topolski completely failed to pay Egan whether based on frequency and amount, so the Indiana Wage Payment Statute applies here.

[15] Topolski also contends that Indiana Code section 22-2-5-1 does not apply or trigger the penalty provision of Indiana Code section 22-2-5-2 because Egan failed to submit a request for payment. However, the trial court determined that Egan made numerous oral requests for payment throughout the course of her employment and submitted a written request for payment in her April 10, 2012 resignation letter. That evidence clearly supports that these requests were made. We therefore conclude that the trial court properly awarded liquidated damages and attorney's fees to Egan under Indiana Code section 22-2-5-2.

## Conclusion

[16] We conclude that sufficient evidence supports the trial court's calculation of unpaid back pay Topolski owed to Egan and that the trial court properly awarded Egan liquidated damages and attorney's fees under Indiana Code section 22-2-5-2.

[17] Affirmed.

Baker, J., and Bailey, J., concur.