**ST. VINCENT HOSPITAL AND HEALTH CARE CENTER, INC., Appellant–Defendant,**

v.

**Robert J. STEELE, M.D., Appellee–Plaintiff.**

No. 34A02–0005–CV–294.

Court of Appeals of Indiana.

Feb. 21, 2001.

N. Kent Smith, Letha S. Kramer, Indianapolis, IN, Attorney for Appellant.

Lorie A. Brown, Lester H. Cohen, Kenneth E. Lauter, Ryan C. Fox, Indianapolis, IN, Attorney for Appellee.

## OPINION

HOFFMAN, Senior Judge

Defendant–Appellant St. Vincent Hospital and Health Care Center, Inc. ("St. Vincent") appeals the trial court's order granting summary judgment in favor of Plaintiff Appellee Robert J. Steele, M.D. ("Steele") on his claims for statutory liquidated damages and statutory attorneys' fees pursuant to Ind.Code § 22–2–5–2. We affirm.

The facts are not in dispute. On or about April 6, 1995, Steele and St. Vincent entered into a Physician Employment Agreement ("Agreement") with an effective date of April 1, 1995. The Agreement contained a schedule of compensation and was for a period of five years, to conclude on March 31, 2000. That Agreement was amended on August 15, 1996, with a retroactive date of April 1, 1995. The Agreement provided for bi-weekly payment of compensation.

The schedule of compensation provided in part as follows:

> For years of this Agreement subsequent to its first year, Physician's compensation each year shall be Base Compensation or fifty-six percent (56%) of Collections for that year or fifty-six percent (56%) of Collections from the previous year whichever is greater.

(R. 159–160). The term "collections" was defined to include "that cash actually received, during the applicable year, from standard medical office operations performed by Physician at the Practice Site, including physician charges for office visits, Hospital visits, insurance receipts, revenue received from laboratory and radiology services except for revenue for those services from Medicare or Medicaid, and other billed services for which income is received at the Practice Site." (R. 160).

During the first two years of the Agreement, St. Vincent compensated Steele as provided for in the Agreement. That initial compensation included revenue received in Steele's office for administration of chemotherapy and other drugs. Steele is board certified in internal medicine and oncology. As an oncologist, his treatment of patients who have cancer includes the administration of chemotherapy.

Before St. Vincent and Steele entered into the initial Agreement and subsequent amendment to the Agreement, Congress passed legislation known as Stark I.[1] Stark I became effective January 1, 1992, and in relevant part prohibited physicians from referring Medicare and Medicaid patients to any clinical laboratory in which the physician, or immediate family member of the physician, had a financial relationship. Congress later passed Stark II,[2] which became effective in 1993. Stark II, in relevant part, provided that if a physician or an immediate family member of the physician has a financial relationship with an entity, then the physician may not make a referral to the entity for the provision of "designated health services" for which payment may otherwise be made under Medicare/Medicaid, and the entity may not present, or cause to be presented, a claim under Medicare/Medicaid or submit a bill to any individual, third-party payor or other entity for designated health services furnished pursuant to a prohibited referral. Stark II referred to "designated health services" as including the provision of outpatient prescription drugs.[3]

In 1998, which happened to be the third year under the Agreement, the Health Care Financing Administration ("HCFA") issued proposed regulations in which it submitted its interpretation of the Stark II legislation. HCFA issued its interpretations of the term "outpatient prescription drugs" as used in the definition of "designated health services" under 42 U.S.C. § 1395nn(h)(6), as follows:

We ... propose to limit "outpatient prescription drugs" to drugs that a patient would be able to obtain from a pharmacy with a prescription. We consider that this category includes any drugs that a patient could get with a prescription, even if patients generally do not do so.

For example, we would include such drugs as oncology drugs that are routinely furnished in a physician's office, under the physician's direct supervision, provided the drugs could be obtained by prescription from a pharmacy.
63 Fed.Reg. 1569,1680.

St. Vincent decided to exclude from the computation of Steele's collections, those services for the administration of chemotherapy and certain other medications to Medicare and Medicaid patients, for years three and four of the Agreement. The chemotherapy medications listed as excluded were administered by Steele or his staff into patients' muscles or veins. Chemotherapy medications administered by a physician or under a physician's supervision are not available from a retail pharmacy with a prescription.

On December 18, 1998, Steele filed a complaint against St. Vincent alleging breach of the Agreement by failing to pay compensation due and owing despite demand for payment. On October 5, 1999, Steele filed his motion for summary judgment and declaratory judgment. On November 8, 1999, St. Vincent filed its cross-motion for summary judgment. St. Vincent's position was that it could not pay the amounts due and owing under the Agreement because of the proposed regulations. On November 30, 1999, Steele filed his reply.

The trial court held a hearing on the motions on November 30, 1999. On February 14, 2000, the trial court issued an order granting Steele's motion for summary judgment in part and declaratory judgment. The trial court heard evidence on the issues of liquidated damages, attorneys' fees, and costs in a hearing begun March 2, 2000, and concluded on April 7, 2000. The trial court ordered St. Vincent to pay $277,812.92 in unpaid wages,

---

**1.** Stark I can be found at 42 U.S.C. § 1395nn (August 14, 1935, c. 531, Title XVIII, § 1877, as added Dec. 19, 1989, Pub.L. 101–239, Title VI, § 6204(a), 103 Stat.2236).

**2.** Stark II can be found at 42 U.S.C. § 1395nn (August 10, 1993, Pub.L. 103–66, Title XVIII, § 13562(a), 107 Stat. 596).

**3.** 42 U.S.C. § 1395nn(h)(6).

$555,625.84 in liquidated damages, and $48,000.00 in attorney fees. St. Vincent initiated this appeal and requested that we vacate the portion of the trial court's order awarding liquidated damages and attorneys' fees to Steele.[4]

An appellant, in this case St. Vincent, bears the burden of proving that the trial court erred in determining that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *See* Ind. Trial Rule 56(C); *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993). The trial court's decision on a motion for summary judgment enters the process of appellate review clothed with a presumption of validity. *See Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). The party appealing from the order granting summary judgment must persuade the appellate tribunal that the judgment was erroneous. *Id.* Furthermore, we are not limited to reviewing the trial court's reasons for granting summary judgment, but will affirm an order granting summary judgment if it is sustainable on any theory or basis found in the record. *Id.*

Although a trial court may enter findings of fact and conclusions of law, as is the case here, the entry of specific findings and conclusions does not alter the nature of a summary judgment, which is a judgment entered when there are no genuine issues of material fact to be resolved. *See Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). Therefore, we are not bound by the trial court's specific findings of fact and conclusions. *Id.* Those findings and conclusions merely serve as an aid to the appellate tribunal in its review by providing a statement of reasons for the trial court's actions and determinations. *Id.*

At issue in the present case is whether Indiana's Wage Payment Stat-

ute's[5] provisions for liquidated damages and attorneys' fees are applicable. St. Vincent argues that the trial court erred by concluding that the statute applies. St. Vincent argues that those provisions govern only the frequency with which an employer pays an employee and not the amount the employer pays.

Ind.Code § 22-2-5 *et seq.* provides in relevant part as follows:

Sec. 1.  (a) Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee. The payment shall be made in lawful money of the United States, by negotiable check, draft, or money order, or by electronic transfer to the financial institution designated by the employee. Any contract in violation of this subsection is void.

(b) Payment shall be made for all wages earned to a date not more than ten (10) days prior to the date of payment. However, this subsection does not prevent payments being made at shorter intervals than specified in this subsection, nor repeal any law providing for payments at shorter intervals. However, if an employee voluntarily leaves employment, either permanently or temporarily, the employer shall not be required to pay the employee an amount due the employee until the next usual and regular day for payment of wages, as established by the employer. If an employee leaves employment voluntarily, and without the employee's whereabouts or address being known to the employer, the employer is not subject to section 2 of this chapter until:

---

**4.**  As Steele notes in his brief, St. Vincent does not contest the trial court's order on Steele's motion for summary judgment wherein the trial court determined that St. Vincent breached the Agreement.

**5.**  Ind.Code § 22-2-5-2.

(1) ten (10) days have elapsed after the employee has made a demand for the wages due the employee; or

(2) the employee has furnished the employer with the employee's address where the wages may be sent or forwarded.

Sec. 2. Every such person, firm, corporation, limited liability company, or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in any suit so brought to recover said wages or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys.

We have discovered two conflicting lines of cases dealing with the issue of application of this statute. In *Baesler's Super-Valu v. Indiana Commissioner of Labor ex rel. Bender*, 500 N.E.2d 243 (Ind.Ct.App.1986), a panel of this court affirmed a trial court's award of vacation pay to an employee who had voluntarily left her position. After determining that the employee was entitled to payment for accrued vacation, we held that the award of liquidated damages and attorney fees was appropriate because the employee requested payment for accrued vacation after she voluntarily left her employment and her employer failed to pay her for that accrued vacation on the next usual and regular day for the payment of wages. 500 N.E.2d at 248.

Also, in *Gurnik v. Lee*, 587 N.E.2d 706 (Ind.Ct.App.1992), a panel of this court held that an employee whose contract provided for an annual salary payable in weekly installments and for a minimum annual bonus of $5,300.00, was entitled to the unpaid bonus she demanded from her employer after she resigned at year's end in 1985. After concluding that a bonus was a wage for purposes of Ind.Code § 22-2-5-1 *et seq.*, we held that the employee was entitled to liquidated damages and attorney fees pursuant to the statute. 587 N.E.2d at 710.

In *Sallee v. Mason*, 714 N.E.2d 757 (Ind. Ct.App.1999), Mason sold her accounting practice and became an employee of the purchaser. Mason's employment contract provided for several things including the requirement that she work 2280 hours annually. In return she was to be paid an annual salary of $34,200.00 or $15.00 per hour, payable in bimonthly installments. The employer was to review her salary on an annual basis for cost of living adjustments. Mason appealed the trial court's decision on her counterclaim against Sallee. The trial court awarded Mason $2,651.55 in unpaid wages. Mason contended that the trial court erred by failing to award her liquidated damages and attorney fees pursuant to Ind.Code § 22-2-5-2. A panel of this court agreed holding that Sallee was liable for liquidated damages and attorney fees for failing to pay Mason for time worked in excess of the 2,280 hours required annually. 714 N.E.2d at 764.

In these cases, the employee complained about incomplete compensation, or not being paid the total amount due. These employees did not complain about the frequency with which they were paid.

St. Vincent primarily relies upon *Hendershot v. Carey*, 616 N.E.2d 412 (Ind.Ct.App.1993), *Huff v. Biomet*, 654 N.E.2d 830 (Ind.Ct.App.1995), *Haxton v. McClure Oil Corp.*, 697 N.E.2d 1277 (Ind.Ct.App.1998), and *Indiana Department of Labor v. Richard*, 732 N.E.2d 810 (Ind.Ct.App.2000), *transmitted on transfer* December 4, 2000, to support its position.

In *Hendershot*, the city had determined the annual salaries of and had established a bi-weekly payment schedule for its employees. However, the city erroneously calculated the amount of the installments based upon twenty-six weeks instead of twenty-seven weeks, which was the case that year. The city found out with ten weeks to go in the calendar year that the salary had been incorrectly divided. Because the city was unable to appropriate more money to cover a potential shortfall, the city offered employees the option of being paid a lesser amount over the remaining weeks of the calendar year, or the option of waiting for four weeks between pay periods for one time only.

Some of the employees filed a complaint against the city alleging that the city had violated Ind.Code § 22–2–5–2 by going for more than two weeks without paying city employees. A panel of this court held that the city did not violate the statute because some of the employees chose the option of waiting four weeks before they received another paycheck. 616 N.E.2d at 415–416. We held that the city could not be penalized for allegedly violating the statute when some of the employees chose that option. *Id.*

In *Huff v. Biomet, Inc.*, 654 N.E.2d 830 (Ind.Ct.App.1995), the executrix of an employee's estate brought an action against the company alleging a violation of Ind. Code § 22–2–5–1 *et seq.* The employee entered into an employment agreement with the company that provided for payment of commission on a bi-monthly basis for products sold within a specific territory. The agreement included a provision that the company could change the commission rates without the employee's consent. The company reached a settlement agreement with the employee's predecessor shortly after which the company began deducting amounts from the employee's bi-monthly commission checks. The employee died. The executrix of the employee's estate then filed the complaint. After finding that Ind.Code § 22–2–5–1 *et seq.*

applied to the parties, a panel of this court held that the trial court correctly granted the company's motion to dismiss because the estate could not recover under that statute. 654 N.E.2d at 835. We held that the executrix disputed only the amount paid, not the time or frequency of the payments and that there was no evidence that the employee disputed the deductions from his commissions, or that he had demanded a specific frequency of the payments. *Id.* We cited to a statement made in *Hendershot*, that the statute was concerned only with violations of the frequency of payments made to employees and not the amount of the payment. *See Hendershot*, 616 N.E.2d at 415.

In *Haxton v. McClure Oil Corp.*, 697 N.E.2d 1277 (Ind.Ct.App.1998), an employee brought a small claims action against her employer for a reduction in the amount she was paid for wages earned and for accrued vacation. Employee had given her employer two weeks notice as provided for in the employment agreement, but had only worked four days after giving notice. The agreement contained a provision that an employee's wages could be reduced to the Federal Minimum Wage rate if the employee failed to give the required written notice. The employee argued that she was entitled to be paid at her regular rate for the accrued vacation and hours worked. We held that the trial court erred by upholding the reduction of the amount of vacation pay because the vacation pay had vested prior to the violation of the notice provision. 697 N.E.2d at 1281. We cited to *Huff* and *Hendershot* for the proposition that since the statute only dealt with the frequency of payments made to employees that it was inapplicable. *Id.* We held that the employee was not entitled to liquidated damages and attorney fees because the employer did not deny that wages were owed. The employer disputed the amount of wages that were owed to the employee.

In *Indiana Department of Labor v. Richard*, 732 N.E.2d 810 (Ind.Ct.App. 2000), *trans. pending*, an employee working for a trucking company struck and

damaged a fence during the course of employment. The trucking company deducted the cost of the fence repair from the employee's wages. After his termination, the employee filed a wage claim with the Department of Labor and assigned his claim to them. The trucking company ultimately tendered the deducted amount, but the employee refused and filed suit. The trucking company counterclaimed for the damages to the fence alleging that the employee was negligent. The trial court offset the claims. The employee appealed alleging that the trial court erred by failing to award liquidated damages and attorney fees under Ind.Code § 22–2–5–1 *et seq.* A panel of this court held that the statute did not apply because the wage claim was made after the employee had been terminated from employment. 732 N.E.2d at 813.

We held in the alternative that the statute did not apply because there was no allegation regarding the frequency of payments made to the employee. *Id.* We opined that because the dispute involved the amount of payment due, Ind.Code § 22–2–9–3 was the appropriate statute under which to proceed. *Id.*

The present case is distinguishable from the cases cited by St. Vincent. In *Hendershot,* the employer was found not liable for an option agreed to by its employees that resulted in four weeks between installments. Arguably, the statement that the wage payment statute did not apply in cases where the amount of pay was an issue is dicta, since the main issue before that panel involved frequency. In *Huff,* the contract provided for unilateral modification of the commission amount, plus there was no evidence that the employee, during his lifetime, took action to bring the compensation issue under the terms of the statute. There was no evidence that he demanded to be paid semi-monthly or bi-weekly, or that he contested the reduction in his commission pay. In *Haxton,* the employee was not entitled under the terms of her contract to full pay for the hours she worked after giving notice to her employer. Therefore, the statute was inap-

plicable to that issue. However, she was entitled to full vacation pay because her vacation pay had accrued prior to the violation of the notice requirement of her contract. Liquidated damages and attorneys fees were not awarded based upon the frequency statement made in *Hendershot* and reiterated in *Huff.* In *Richard,* the statute did not apply because the wage claim was made after the employee was terminated from employment. We offered an alternative holding that there was no allegation regarding the frequency of payments citing *Hendershot, Huff* and *Haxton.*

■ In the present case, Steele was still employed by St. Vincent at the time demands were made for total compensation. St. Vincent argues that it had a good faith basis for withholding a portion of the wages earned by Steele because of the Stark legislation and the HCFA interpretation. That argument fails here. We previously have held that there is no good faith exception contained in the statute. *See Osler Institute, Inc. v. Inglert,* 558 N.E.2d 901, 905 (Ind.Ct.App.1990), *aff'd on other grounds,* 569 N.E.2d 636 (Ind.1991).

Steele is correct that if Ind.Code § 22–2–5–2 only deals with the frequency of pay then an employer can avoid the penalty provisions of the statute by tendering $1.00 bi-weekly or semi-monthly regardless of the amount of salary agreed to by the parties. However, the statute also makes reference to paying the employee the *amount due.* We believe that the instant case is distinguishable from the cases relied upon by St. Vincent. The trial court correctly found that Indiana's Wage Payment Statute applied to the case at bar. Steele is entitled to liquidated damages and attorney fees under that statute.

Affirmed.

FRIEDLANDER and MATTINGLY, JJ., concur.