ST. VINCENT HOSPITAL AND
HEALTH CARE CENTER,
INC., Appellant–Defendant,

v.

Robert J. STEELE, M.D.,
Appellee–Plaintiff.

No. 34S02–0107–CV–329.

Supreme Court of Indiana.

April 22, 2002.

N. Kent Smith, Letha S. Kramer, Hall, Render, Killian, Heath & Lyman, P.S.C., Indianapolis, IN, for Appellant.

Lorie A. Brown, Brown Law Office, P.C., Kenneth E. Lauter, Ryan C. Fox, Haskin Lauter & LaRue, Indianapolis, IN, for Appellee.

Steve Carter, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Nancy J. Guyott, Chief Counsel, J.T. Whitehead, Counsel, Indiana Department of Labor, Indianapolis, IN, for Amicus Curiae Commissioner of Indiana Department of Labor.

William R. Groth, Geoffrey S. Lohman, Fillenwarth Dennerline Groth & Towe, Indianapolis, IN, for Amicus Curiae Indiana State Building & Construction Trades Council.

## ON PETITION TO TRANSFER

RUCKER, Justice.

We grant transfer to resolve a conflict of authority in the Court of Appeals concerning Indiana's Wage Payment Statute. We conclude the statute governs both the frequency and amount an employer must pay its employee.

### Facts and Procedural History

The facts of this case are undisputed. Robert Steele is a practicing physician in Kokomo who is board certified in internal medicine and oncology. On April 6, 1995, Dr. Steele and the St. Vincent Hospital and Health Care Center, Inc. ("St. Vincent") entered into an employment agreement that extended from April 1, 1995, through March 31, 2000. The agreement provided for the bi-weekly payment of compensation as follows:

> For the first year of this Agreement, Hospital shall compensate Physician the greater of Five Hundred Twenty–Five Thousand Dollars ($525,000) per annum or fifty-six percent (56%) of Collections ... resulting from Physician's provision of Professional Services at the Practice Site.
>
> ...
>
> For years of this Agreement subsequent to its first year, Physician's compensation each year shall be Base Compensation or fifty-six percent (56%) of Collec-

tions for that current year or fifty-six percent (56%) of Collections from the previous year, whichever is greater.

R. at 159. The agreement defined "Collections" as:

[T]hat cash actually received, during the applicable year, from standard medical office operations performed by Physician at the Practice Site, including physician charges for offices visits, Hospital visits, insurance receipts, revenue received from laboratory and radiology services except for revenue for these services received from Medicare or Medicaid, and other billed services for which income is received at the Practice Site.

R. at 160.

During the first two years, St. Vincent compensated Dr. Steele according to the terms of the agreement. However, in 1998, the third year of the agreement, St. Vincent began excluding from Collections any monies Dr. Steele received from Medicare and Medicaid for the administration of chemotherapy and other medications. In so doing, St. Vincent relied on a proposed regulation issued by the federal Health Care Financing Administration in January 1998. The proposed regulation interpreted congressional legislation known as Stark II. Among other things, Stark II prohibited physicians from referring Medicare and Medicaid patients, for certain prescription drugs, to a clinical laboratory in which the physician had a financial interest.[1]

Dr. Steele filed a complaint against St. Vincent alleging breach of contract for failure to pay the full amount of compensation due under the terms of the agreement and for violation of Indiana's Wage Payment Statute. He subsequently filed a motion for summary judgment, and St. Vincent filed a cross-motion contending that it could not pay the full amount due under the terms of the agreement because of the proposed federal regulation and thus there was no violation of the Wage Payment Statute. Ruling that St. Vincent breached the agreement and violated the statute, the trial court entered summary judgment in favor of Dr. Steele. After a series of hearings on damages, the trial court ordered St. Vincent to pay $277,823.92 in unpaid wages, $555,625.84 in liquidated damages, and $48,000.00 in attorney fees.

St. Vincent appealed contending the trial court erred in awarding liquidated damages and attorney fees. Citing Court of Appeals authority in support of its position, St. Vincent argued that the Wage Payment Statute governs only the frequency with which an employer must pay its employee. Thus, the argument continued, there was no violation of the statute here because the dispute between the parties concerned only the amount of wages due. Relying on contrary authority, Dr. Steele insisted the statute governs both the frequency as well as the amount due. Acknowledging the conflict of authority on the issue, the Court of Appeals affirmed the trial court ruling that the statute governs both the frequency and amount an employer must pay its employee. *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 742 N.E.2d 1029, 1035 (Ind.Ct.App. 2001). St. Vincent seeks transfer.[2] Al-

---

1. *See* Medicare and Medicaid Programs; Physicians' Referrals to Health Care Entities With Which They Have Financial Relationships, 63 Fed.Reg. 1659, 1680 (proposed Jan. 9, 1998). The proposed regulation was superceded January 4, 2001, by another regulation which allows the compensation at issue here. *See*

Medicare and Medicaid Programs; Physicians' Referrals to Health Care Entities With Which They Have Financial Relationships, 66 Fed.Reg. 856, 881 (Jan. 4, 2001) (to be codified at 42 C.F.R. pt. 411, 424).

2. Before the Court of Appeals, St. Vincent argued that it had a good faith basis for

though we reach the same conclusion as the Court of Appeals, we grant transfer to resolve the conflicting opinions on the question of whether the Wage Payment Statute governs both the frequency and amount an employer must pay its employee.

### *Standard of Review*

Summary judgment is proper if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 592 (Ind.2001). On appeal, we construe all facts and reasonable inferences drawn from those facts in a light most favorable to the nonmoving party. *Felsher*, 755 N.E.2d at 592. We carefully review the trial court's decision to ensure that the responding party was not improperly denied its day in court. *Id.*

### *Discussion*

#### I.

##### *The Wage Payment Statute*

Indiana Code section 22–2–5, commonly referred to as the Wage Payment Statute, provides:

(a) Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee. The payment shall be made in lawful money of the United States, by negotiable check, draft, or money order, or by electronic transfer to the financial insti-

tution designated by the employee. Any contract in violation of this subsection is void.

(b) Payment shall be made for all wages earned to a date not more than ten (10) days prior to the date of payment. However, this subsection does not prevent payments being made at shorter intervals than specified in this subsection, nor repeal any law providing for payments at shorter intervals. However, if an employee voluntarily leaves employment, either permanently or temporarily, the employer shall not be required to pay the employee an amount due the employee until the next usual and regular day for payment of wages, as established by the employer. If an employee leaves employment voluntarily, and without the employee's whereabouts or address being known to the employer, the employer is not subject to section 2 of this chapter until:

(1) ten (10) days have elapsed after the employee has made a demand for the wages due the employee; or

(2) the employee has furnished the employer with the employee's address where the wages may be sent or forwarded.

Ind.Code § 22–2–5–1. If an employer fails to make payment of wages in accordance with this section, then the employer:

[A]s liquidated damages for such failure, [shall] pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a

---

withholding a portion of Dr. Steele's earned wages because of the Stark II legislation and the HFCA proposed regulation. The Court of Appeals observed that there is no good faith exception to the Wage Payment Statute. *St.*

*Vincent*, 742 N.E.2d at 1035. On transfer, St. Vincent does not challenge that portion of the Court of Appeals' decision, and we express no opinion on the issue.

suit to recover the amount due to such employee, and in any suit so brought to recover said wages or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys.

I.C. § 22–2–5–2.

There is no dispute that the Wage Payment Statute governs the frequency with which an employer must pay its employee. However, a line of authority on this point takes the position that the statute addresses *only* the frequency and not the amount an employer must pay. *See Ind. Dep't of Labor v. Richard,* 732 N.E.2d 810, 813 (Ind.Ct.App.2000), *trans. denied; Haxton v. McClure Oil Corp.,* 697 N.E.2d 1277, 1281 (Ind.Ct.App.1998); *Huff v. Biomet, Inc.,* 654 N.E.2d 830, 835 (Ind.Ct.App. 1995). This view was first expressed in *Hendershot v. Carey,* 616 N.E.2d 412 (Ind. Ct.App.1993). That case involved a class action lawsuit against the City of Muncie by municipal employees. Among other things, the employees contended that the City wrongfully withheld their wages in violation of the Wage Payment Statute when more than two weeks elapsed before it issued paychecks. The court observed that in order to place liability upon an employer for failure to issue paychecks at least every two weeks, an employee must first submit a request to that effect. Because some employees apparently accepted the City's offer to go four weeks rather than two before receiving a paycheck, the court held that those employees could not now charge the City with responsibility that the employees had undertaken. Without elaboration the court went on to say that it was not relevant that the amount of the checks was in dispute because "the statute addresses the frequency with which an employer must pay its employees, not the amount that it must pay." *Id.* at 415. Subsequent Court of Appeals opinions have cited *Hendershot* for the quoted proposition.

There is another line of authority awarding employees liquidated damages and attorney fees where the claim involves the failure of an employer to pay the amount of wages when due. However, in those cases there is no discussion about the tension between frequency versus amount. *See, e.g., Sallee v. Mason,* 714 N.E.2d 757, 764 (Ind.Ct.App.1999), *trans. denied; Valadez v. R.T. Enterprises, Inc.,* 647 N.E.2d 331, 333 (Ind.Ct.App.1995); *Gurnik v. Lee,* 587 N.E.2d 706, 710 (Ind.Ct.App.1992); *Baesler's Super–Valu v. Ind. Comm'r of Labor ex rel. Bender,* 500 N.E.2d 243, 249 (Ind.Ct.App.1986).

 Our reading of the statute compels the conclusion that the Wage Payment Statute governs both the frequency and amount an employer must pay its employee.[3] The first step in interpreting

---

3. As written, this statute applies equally to highly compensated professionals as well as "the vast majority of workers who are dependent on their paychecks for their day-to-day expenses." *Op.* at 700 (Boehm, J., concurring). Apparently recognizing that the two groups do not stand on equal footing, a number of states have excluded certain classes of employees from the application of their wage payment statutes. *See, e.g.,* D.C.Code Ann. § 32–1301 (excluding persons employed in a bona fide executive, administrative, or professional capacity from its payment of wages statute); Md.Code Ann., Labor and Employment § 3–502 (setting forth a different set of rules in its payment of wages statute for administrative, executive, or professional employees); Mass. Gen. Laws Ann. ch. 149, § 148 (setting forth a different set of rules in its payment of wages statute for employees engaged in a bona fide executive, administrative, or professional capacity); Miss.Code Ann. § 71–1–35 (excluding individuals employed in a bona fide executive, administrative, or professional capacity from its payment of wages statute); N.Y. Labor Law

any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question. *Rheem Mf'g Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 947 (Ind.2001). When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. *Id.* Clear and unambiguous statutory meaning leaves no room for judicial construction. *Id.*

■ Indiana Code section 22–2–5–1 provides that an employer "shall pay each employee at least semimonthly or biweekly, if requested, the *amount due* the employee." I.C. § 22–2–5–1(a) (emphasis added). This section later provides that "[p]ayment shall be made for *all wages* earned to a date not more than ten (10) days prior to the date of payment." *Id.* (emphasis added). If an employee voluntarily leaves employment, the section continues, then "the employer shall not be required to pay the employee an *amount due* the employee until the next usual and regular day for payment of wages...." I.C. § 22–2–5–1(b) (emphasis added). In our view, the plain, ordinary, and usual meaning of the phrases "all wages" and "amount due" unambiguously establishes that the legislature intended the Wage Payment Statute to govern not only the frequency but also the amount an employer must pay its employee. To conclude otherwise would be to read out of the statute that which clearly exists.[4]

■ Another familiar canon of statutory construction supports this conclusion as well: statutes are to be construed so as not to produce an absurdity. *Civil Rights Comm'n v. County Line Park, Inc.*, 738 N.E.2d 1044, 1048 (Ind.2000). If we interpreted the statute as St. Vincent suggests, namely: that the Wage Payment Statute governs only the frequency, then an employer could avoid the penalty provisions of the statute by simply tendering $1.00 biweekly or semimonthly regardless of the amount of wages agreed to by the parties. Likewise, if the statute governed only the amount of wages due, then an employer could avoid the penalty provisions of the statute by tendering the entire wage agreed to by the parties on the last day of the year. The legislature surely did not intend either result. That the statute governs both the frequency and amount recognizes that these two concepts are inextricably intertwined and cannot logically be separated under the text of the statute.

## II.

### *The Wage Claims Statute*

Our conclusion that the Wage Payment Statute governs both the frequency and amount an employer must pay its employee does not resolve the dispute between the parties before us. This is so because another statute, which we will refer to as the "Wage Claims Statute," also concerns disputes over the amount of wages due and provides for the recovery of liquidated

§ 191 (confining its payment of wages statute to manual workers).

4. Conceding that the plain language of the statute cuts against its position, St. Vincent argues that the Wage Payment Statute cannot possibly govern the amount an employer must pay its employee because the statute does not establish what that wage is or how it is to be calculated. Reply in Support of Appellant's Petition to Transfer at 1–2. However, as long as an employer is in compliance with the applicable minimum wage laws, an employee's wage is a mutual decision not governed by statute. *See* I.C. §§ 22–2–2–1 to –4. Therefore, even though the Wage Payment Statute does not establish what that wage is or how it is to be calculated, that fact does not affect our conclusion.

damages and attorney fees. According to St. Vincent, there is a lack of clarity regarding when a claimant should proceed under the Wage Claims Statute as opposed to the Wage Payment Statute. St. Vincent argues that in any event Dr. Steele should have proceeded under the former.

The Wage Claims Statute provides in relevant part:

In case of a dispute over wages, the employer shall give notice to the employee of the amount of wages which he concedes to be due, and shall pay such amount, without condition, within the time fixed by this chapter, but the acceptance by the employee of any payment made under this chapter shall not constitute a release as to any balance of his claim.

I.C. § 22-2-9-3. Claimants who proceed under this statute may not file a complaint with the trial court. Rather, the wage claim is submitted to the Indiana Department of Labor. It then becomes "the duty of the commissioner of labor to enforce and to insure compliance with the provisions of this chapter, to investigate any violations of any of the provisions of this chapter, and to institute or cause to be instituted actions for penalties and forfeitures provided under this chapter." I.C. § 22-2-9-4(a). To that end, the commissioner "may hold hearings to satisfy himself as to the justice of any claim, and he shall cooperate with any employee in the enforcement of any claim against his employer in any case whenever, in his opinion, the claim is just and valid." *Id.* Further, the commissioner may take assignments of wage claims under $800 and refer wage claims to the Attorney General, who may then initiate a civil action on behalf of the wage claimant or refer the wage claim to a private attorney. I.C. §§ 22-2-9-4(b), -5. Claimants whose lawsuits have been initiated by the Attorney General or the Attorney General's designee are entitled to recover liquidated damages and attorney fees as set forth in Indiana Code section 22-2-5-2. I.C. § 22-2-9-4(b).

■ Although both the Wage Claims Statute and the Wage Payment Statute set forth two different procedural frameworks for wage disputes, each statute applies to different categories of claimants. The Wage Claims Statute references employees who have been separated from work by their employer and employees whose work has been suspended as a result of an industrial dispute. I.C. § 22-2-9-2(a)(b). By contrast, the Wage Payment Statute references current employees and those who have voluntarily left employment, either permanently or temporarily. I.C. § 22-2-5-1(b). Because Dr. Steele was a current employee of St. Vincent at the time of the wage dispute, he proceeded correctly under the Wage Payment Statute.

### III.

#### *Appellate Attorney Fees*

■ While this case was pending on transfer, Dr. Steele filed a petition requesting appellate attorney fees. St. Vincent did not file a memorandum in response. In any event, the request is based on the same provision of the Wage Payment Statute that provided the basis for attorney fees awarded by the trial court. *See* I.C. § 22-2-5-2 ("[T]he court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys."). This statute does not expressly address whether the quoted provision includes appellate attorney fees. However, the Court of Appeals has held that it does include them. *See Valadez,* 647 N.E.2d at 333; *Johnson v. Wiley,* 613 N.E.2d 446, 451 (Ind.Ct.App.1993); *Vazquez v. Dulios,* 505 N.E.2d 152, 154–55

(Ind.Ct.App.1987). When first so holding, the Court of Appeals relied on this Court's opinion in *Templeton v. Sam Klain & Son, Inc.*, 425 N.E.2d 89 (Ind. 1981). *See Vazquez*, 505 N.E.2d at 154–55. In *Templeton*, we determined that a lien enforcement statute that provided for the recovery of "reasonable attorney's fees" included appellate attorney fees because otherwise a reasonable fee for the prosecution of the claim alone would not be a reasonable fee for those services plus the costs of defending the judgment on appeal. *Templeton*, 425 N.E.2d at 95. Thus, we agree with the Court of Appeals' resolution of this issue—appellate attorney fees are included under Indiana Code section 22–2–5–2. We therefore remand this cause to the trial court with instructions to conduct a hearing to determine the amount, and the reasonableness, of appellate attorney fees in this case.

### Conclusion

We affirm the judgment of the trial court.

SULLIVAN, J., concurs.

SHEPARD, C.J., concurs with separate opinion.

BOEHM, J., concurs with separate opinion.

DICKSON, J., concurs in result.

SHEPARD, Chief Justice, concurring.

I write separately to observe that the reason treble damages can be imposed on the employer in this case is that the court ultimately determined that the employer's grounds for reducing its payments to the employee were legally unavailing. Thus, the holding of this case is that the full amount of the employee's earnings were the "amount due him" under the statute. Had the employer's grounds for withhold-ing a part of the employee's wages been upheld, then the employer would have already paid the full "amount due" and treble damages would not be available.

BOEHM, Justice, concurring.

I concur in the majority opinion. I write separately to observe that the facts of this case dramatize the point that the statute confers on all employees the right to recover treble damages and attorney's fees for failure to pay wages, regardless of the employees' circumstances. This is perfectly understandable as applied to the vast majority of workers who are dependent on their paychecks for their day-to-day expenses. These employees need the money currently, not at the end of protracted litigation, and often do not have the economic staying power to engage in a court battle over relatively small amounts. A statute providing one party with treble damages and attorney's fees is a very substantial deterrent to an employer's playing fast and loose with wage obligations. As applied to claims of most workers this is very understandable legislative policy. But the "employee" who earns mid six figures should be able to fend for himself or herself, and there seems to me to be no reason to tip the balance of settlement value of any dispute so dramatically against the employer. The statute as written requires that result for all employees. I write simply to point out what seems to me to be an unnecessary and perhaps unfair skewing of the negotiation as applied to highly compensated executives and professionals.