Tabatha J. NAUGLE and Sandra M. Cain, On behalf of themselves and all others similarly situated, Appellants–Plaintiffs,

v.

BEECH GROVE CITY SCHOOLS, Appellee–Defendant.

No. 49A02–0505–CV–472.

Court of Appeals of Indiana.

Jan. 18, 2006.

Ronald E. Weldy, Abrams & Weldy, Hammond & Hurns, Indianapolis, for Appellants.

David L. Swider, Susan Oliver, Bose McKinney & Evans, Robert W. Rund, D. Michael Wallman, Rund Wallman & Robbins, Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Appellants-plaintiffs Tabatha J. Naugle and Sandra M. Cain (collectively, "Employees") appeal the trial court's grant of summary judgment in favor of appellee-defendant Beech Grove City Schools (Beech Grove). Specifically, Employees argue that the trial court erred in finding for a number of reasons that Indiana Code section 22–2–5–1, the Wage Payment Statute, did not apply in this case. Finding no support for the argument that "days" as used in the Wage Payment Statute means "business days," but concluding that the Wage Payment Statute does not apply to Beech Grove under the reasoning in *Brownsburg Cmty. Sch. Corp. v. Natare Corp.*, 824 N.E.2d 336 (Ind.2005), we affirm the judgment of the trial court.

### FACTS [1]

Naugle and Cain were employed at Beech Grove as custodians during 2003. Prior to 2003, Beech Grove compensated its employees twenty-six times during a calendar year. Under this former payroll method, Beech Grove paid its employees seven calendar days after the end of each pay period. But during 2003, there were twenty-seven pay dates, an anomaly that occurs every seven years, and Beech Grove usually adjusted the pay method so that there were twenty-six pay dates when this had happened in the past. In addition, several employees had requested to

---

1. Oral argument was held in Indianapolis on December 29, 2005. We thank counsel for their detailed briefs and able presentations in this case.

receive their paychecks on the Wednesday before the four-day Thanksgiving break rather than on the Monday following the break. Beech Grove had been unable to do so under the prior payroll schedule because the shorter five-work-day waiting period allowed the school only three work days to prepare and issue the payroll before the break.

To address these issues, Beech Grove implemented a new payroll schedule beginning on July 11, 2003, in which it set back the first pay date in July 2003 from July 4 to July 11. The new payroll schedule also provided for the employees to receive their wages fourteen calendar days after the end of each pay period. Beech Grove received no employee complaints about the new payroll schedule, apart from a single employee who erroneously complained about losing one week of pay. Beech Grove discontinued the new payroll system on July 9, 2004, and returned to the previous seven-calendar-day waiting period.

Naugle voluntarily resigned from her employment with Beech Grove on October 24, 2003, and Cain was terminated by Beech Grove on February 6, 2004. On February 18, 2004, Employees filed suit against Beech Grove, alleging that Beech Grove had violated the Wage Payment Statute by failing to timely pay them their wages on a date not more than ten days after the date on which they were earned (the "Ten–Day Rule"). Employees initiated this claim as a class action, and they requested liquidated damages in the amount of forty percent of all gross wages paid fourteen days after the relevant pay period had ended. In essence, they requested as damages forty percent of one year's salary for each employee of Beech Grove. On May 28, 2004, Employees moved to be certified as a class of:

> All current and former employees of Beech Grove City Schools who are or were employed by Beech Grove City Schools since May 9, 2003 who have been paid wages due and owing for a pay period more than ten (10) days after that pay period had ended in violation of the Indiana Wage Payment Statute and Wage Claim Statute.

Appellant's App. p. 180. The trial court has not yet ruled on this motion because the parties agreed to set it aside while concentrating on the issue of liability.

On November 12, 2004, Employees filed a motion for partial summary judgment, arguing that Beech Grove was liable under the Wage Payment Statute for paying Employees more than ten days after the end of the pay period. On December 20, 2004, Beech Grove filed a cross-motion for summary judgment, asserting a number of arguments, including that the Employees had been paid within ten business days of the end of the pay period and that there had been no demand for earlier payment. On March 14, 2005, the trial court heard oral argument on these motions. And on April 27, 2005, the trial court denied Employees' motion for partial summary judgment and granted Beech Grove's cross-motion for partial summary judgment, finding that the Wage Payment Statute requires a demand for payment before penal damages and attorney's fees may be assessed, that the statute intends "days" to mean business days rather than calendar days, that Beech Grove is not an employer under the Wage Payment Statute, that Beech Grove is immune from punitive damages as a public school system, and that the Wage Payment Statute is not applicable to the facts of this case. Employees now appeal.

## DISCUSSION AND DECISION

Employees assert that the trial court erred in denying their motion for summary judgment and in granting summary judg-

ment to Beech Grove. Specifically, they raise a number of issues with the trial court's judgment, one of which we find dispositive: whether the word "employer" as used in the Wage Payment Statute includes school corporations.

■ Upon reviewing the grant or denial of summary judgment, we use the same standard of review as the trial court. Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Poznanski v. Horvath,* 788 N.E.2d 1255, 1258 (Ind.2003). We will construe all facts and reasonable inferences in favor of the non-moving party. *Troxel v. Troxel,* 737 N.E.2d 745, 748 (Ind. 2000). The review of a summary judgment motion is limited to those materials designated to the trial court. *Id.*

■ The questions raised are issues of statutory construction. The interpretation of a statute is a legal question that is reviewed de novo. *Golden Rule Ins. Co. v. McCarty,* 755 N.E.2d 1104, 1106 (Ind.Ct. App.2001). Statutory interpretation is the responsibility of the court and within the exclusive province of the judiciary. *Id.* The first, and often the last, step in interpreting a statute is to examine the language of the statute. *Id.* When confronted with an unambiguous statute, we do not apply any rules of statutory construction other than to give the words and phrases of the statute their plain, ordinary, and usual meaning. *Id.* Moreover, statutes must be read as a whole, and statutory language must be read and interpreted in context. *Schafer v. Sellersburg Town Council,* 714 N.E.2d 212, 218 (Ind.Ct.App. 1999). The goal in statutory construction is to determine and give effect to legislative intent. *Hall Drive Ins., Inc. v. City of Fort Wayne,* 773 N.E.2d 255, 257 (Ind. 2002).

■ The Wage Payment Statute states in pertinent part:

(a) Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee. The payment shall be made in lawful money of the United States, by negotiable check, draft, or money order, or by electronic transfer to the financial institution designated by the employee. Any contract in violation of this subsection is void.

(b) Payment shall be made for all wages earned to a date not more than ten (10) days prior to the date of payment. However, this subsection does not prevent payments being made at shorter intervals than specified in this subsection, nor repeal any law providing for payments at shorter intervals. . . .

Ind.Code § 22–2–5–1(b). The goal of the Wage Payment Statute is to govern the frequency and amount that employees are paid. *St. Vincent Hosp. v. Steele,* 766 N.E.2d 699, 703 (Ind.2002).

■ Initially, Employees contend that the trial court erred in finding that "days" means "business days" rather than "calendar days" within the context of the Wage Payment Statute. The Wage Payment Statute does not define the terms "days," nor is the word defined in the Construction of Statutes Act in the General Provisions Title. Ind.Code § 1–1–4–5.

■ Employees note that our Supreme Court defined the word "day" over sixty years ago:

"A day is the unit of time. It commences at 12 o'clock P.M. and ends at 12 o'clock P.M., running from midnight to

midnight. In the division of time throughout the world, we believe this is regarded as the civil day. When the word 'day' is used in a statute or in a contract, it means the twenty-four hours, and not merely the day as popularly understood, from sunrise to sunset, or during the time the light of the sun is visible."

*Moag v. State,* 218 Ind. 135, 141, 31 N.E.2d 629, 632 (1941) (quoting *Benson v. Adams,* 69 Ind. 353, 354 (1879)). Thus, where the word "days" is not defined as "business days," the default understanding is "calendar days," and it was error for the trial court to find otherwise.

Although Beech Grove cites to *Koppin v. Strode,* 761 N.E.2d 455, 461 (Ind.Ct.App. 2002), we are not persuaded by this argument. The *Koppin* court found that the word "day" as used in a township policy providing military leave time is ambiguous and open to judicial interpretation because it may be "defined as either 'the mean solar day of 24 hours beginning at mean midnight' or 'the time established by usage or law for work, school, or business.' Merriam Webster's Collegiate Dictionary 294 (10th ed.1994)." *Id.* The regulation at issue provided for fifteen work days of military leave and defined "work day" as "an eight (8) hour period of regularly scheduled duty." *Id.* at 458. This amounts to 120 hours of military leave. But the employees worked for twenty-four hours followed by forty-eight hours off. Their employer's policy gave them five twenty-four hour shifts, or 120 hours, of military leave time. The *Koppin* court found that to interpret the word "day" to mean a twenty-four hour period in that case would be inequitable because those who worked twenty-four hour shifts would receive 360 hours of paid military leave, while those who worked eight-hour shifts would receive only 120 hours of paid military leave. *Id.* at 462. *Koppin* is inapposite because

the word "day" was already defined within the township policy, which is not the case here. *Moag* was clear in its holding that "days" does not mean "business days," and Beech Grove has provided us with no compelling reason to hold otherwise.

Employees next argue that the trial court erred in finding that Beech Grove, as a public school corporation, is not an "employer" within the purview of the Wage Payment Statute. As noted above, the Wage Payment Statute applies to "[e]very person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana . . . ." I.C. § 22–2–5–1(a). Similarly, the Wage Claims Statute defines employer as "every person, firm, partnership, association, corporation, limited liability company, receiver, or other officer of any court of this state, and any agent or officer of any of the above mentioned classes, employing any person in this state." I.C. § 22–2–9–1(a).

Employees contend that Beech Grove is both a corporation and a person, thus making Beech Grove subject to the Wage Payment Statute. Employees assert that Beech Grove is a corporation because it is a school corporation pursuant to Indiana Code section 20–26–2–4. Additionally, Beech Grove is a political body. Indiana Code section 1–1–4–5(17), entitled "Definitions Applicable to Construction of All Indiana Statutes," defines a "person" to "extend[ ] to bodies politic and corporate."

Our Supreme Court recently rejected a similar argument in *Brownsburg Cmty. Sch. Corp. v. Natare Corp.,* 824 N.E.2d 336 (Ind.2005). In *Brownsburg,* the plaintiff, a supplier of prefabricated pools, filed an anti-trust claim against Brownsburg, alleging that the school conspired with an architect and pool consultant to exclude other contractors from being considered. The

plaintiff alleged that Brownsburg was subject to the Anti–Trust Statute because the school was a school corporation and the word "corporation" was included in the definition of "person" in the Anti–Trust Statute. *See* Ind.Code § 24–1–2–10. Our Supreme Court agreed that municipal corporations are "persons" under the Anti–Trust Statute, but found that the substantive prohibitions of the anti-trust laws are criminal in nature and that section four of the Anti–Trust Statute "views governmental entities as victims, not perpetrators, and explicitly relieves them of liability from a contract that was the result of collusive bidding." *Brownsburg,* 824 N.E.2d at 344. Thus, *Brownsburg* instructs us that the General Assembly's purpose is central to cases such as this one in which an issue is whether treble damages should be imposed against a school corporation.

The Wage Payment Statute was enacted in 1933 during the Great Depression to protect Employees' ability to receive the wages they earned, which were vital to their continued existence. As Justice Boehm noted in his concurring opinion in *St. Vincent,* "A statute providing one party with treble damages and attorney's fees is a very substantial deterrent to an employer's playing fast and loose with wage obligations." 766 N.E.2d at 706. Hence, the purpose is to benefit the employees by ensuring that they are timely paid their wages. It is illogical to suggest that public schools should be subject to treble damages for paying wages four days late, but immune from such penalties when they engage in more serious—quasi-criminal— wrongdoing as in *Brownsburg.*

■ Thus, we are constrained by the reasoning in *Brownsburg* to find that the

Wage Payment Statute and its treble damages penalty do not apply to Beech Grove. Were the General Assembly to amend the definition of "person" and "corporation" within the Wage Payment Statute to specifically include school corporations and other governmental entities, our result would certainly be different. *See* I.C. §§ 22–2–2–3, –9 (public entities specifically included in definition of "employers" such that violation of Minimum Wage Law makes them liable to employees for liquidated damages, attorney's fees, and costs); I.C. §§ 22–3–4–12.1, 22–3–6–1 (governmental employers specifically included in definition of "employer" such that if they handle worker's compensation claims in bad faith they are liable for punitive damages and attorney's fees under Worker's Compensation Act). But until that time, we must read the statute in accordance with *Brownsburg.*[2]

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.

---

**2.** Inasmuch as we may affirm the grant of summary judgment on any theory supported by the record, we need not reach the other

issues that Employees raised in their brief. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 914 (Ind.2001).