Darrin **HORNBERGER**, Appellant–Defendant,

v.

**FARM BUREAU INSURANCE,** a/s/o Robert Brewington, Appellee–Plaintiff.

No. 69A01–0611–CV–499.

Court of Appeals of Indiana.

July 2, 2007.

Robert B. Sutherland, Law Offices of Hanover Insurance Group, Broadview Heights, OH, Attorney for Appellant.

Kristin A. Mulholland, Mulholland & Lake, LLC, Merrillville, Michael P. Irk, Kevin L. Moyer, Douglas Moyer & Irk, P.C., Frankfort, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Darrin Hornberger brings this interlocutory appeal of the trial court's denial of his motion for summary judgment in an action brought against him by Farm Bureau Insurance ("Farm Bureau"), as subrogee of Robert Brewington, seeking damages for injuries suffered by Brewington when he was struck by a vehicle driven by Hornberger.

We affirm.

### ISSUE

Whether the trial court erred when it denied Hornberger's motion for summary judgment.

### FACTS

On August 1, 2002, while driving his vehicle, Hornberger struck Brewington, who was riding his motorcycle. Hornberger was insured by a policy with Citizens Insurance Company ("Citizens"). On August 2, 2002, Farm Bureau, with whom Brewington had a policy of insurance, received a claim from Brewington due to the accident.

On September 9, 2002, Farm Bureau informed Citizens by letter that Brewington was its insured; that he had presented a claim for damages as a result of the accident with Hornberger; that Farm Bureau was subrogated to the rights of Brewington; and that its investigation indicated that Hornberger was "legally responsible for the loss." (App.51). In response, Citizens sent Farm Bureau a letter dated September 18, 2002, wherein it stated that its investigation showed that Brewington was "50% at fault in this collision," and that Citizens' "offer in settlement of Farm Bureau's lien [was] 50%." (App.52). The letter further advised Farm Bureau that "[i]n a letter mailed yesterday," Citizens had "offered [its] $50,000 liability policy limit to [Brewington] to settle his" bodily injury claim. *Id.*

On October 20, 2003, Brewington wrote to Citizens, acknowledging receipt of its "letter of September 17, 2003."[1] (App.55). Brewington stated in his letter that Citizens had failed to provide him with proof of Hornberger's policy limits as he had requested in two previous letters to Citizens, and that this documentation was necessary for him to "present[ ] an underinsured motorist claim to Farm Bureau Insurance." *Id.* Brewington further noted that in Citizens' September 17 letter

---

1. This letter was also referenced by Citizens in its September 18, 2002, letter to Farm Bureau. However, the September 17th letter was not designated as evidence and is not present in the Appendix.

to him, it had "neglected to mention" Citizens' position as stated in its September 18 letter to Farm Bureau—that Brewington "was 50% at fault in this accident." *Id.* Brewington asserted that he had "no intention of accepting responsibility for an accident for which [he] was in no way at fault, a fact which [Hornberger] has acknowledged in two statements." *Id.*

On October 27, 2003, "in response" to Brewington's letter of October 20, 2003, Citizens wrote Brewington that it had ordered a certified copy of Hornberger's policy and would send it to him "to verify [Citizens'] $50,000 policy limit." (App.54). On November 4, 2003, Citizens sent Brewington a copy of the declarations page for Hornberger's policy.

On November 13, 2003, Farm Bureau wrote Brewington to confirm their telephone conversation of that day in which Farm Bureau had informed Brewington that it was "prepared to front the underlying limits" of Hornberger's policy with Citizens. (App.58). The letter also confirmed Farm Bureau's receipt of a copy of the "certification of policy coverage from Citizens." *Id.* The letter further "ask[ed] that [Brewington] not make any agreements or settlements directly with Citizens Insurance or ... Hornberger in regards to [the August 1, 2002 accident] without the prior consent of Farm Bureau Insurance." (App.57).

On January 16, 2004, Farm Bureau again wrote to Brewington to confirm that "on or about November 13, 2003" (the date of the above referenced telephone conversation and letter), Farm Bureau had received the letter sent to Brewington from Citizens dated November 4, 2003, in which Citizens "extended their [sic] insured's policy limits of $50,000." (App.58). The letter further stated that upon receiving the letter, Farm Bureau had "contacted [Brewington] to advise that Farm Bureau

Insurance intended fronting the $50,000.00 policy limits to protect their subrogated interest." *Id.* "At that time," the letter continued, Brewington had "advised [Farm Bureau] that [he was] not accepting the policy limits offer of $50,000.00 from Citizens Insurance in the form in which it was made," noting "that Citizens would not accept 100% liability on their [sic] insured," and that Brewington had "advised ... that [he] would not accept Farm Bureau Insurance's draft in the amount of $50,000.00." *Id.* The letter further stated that "on November 18, 2003 [Brewington] stopped by the Farm Bureau Office ... to discuss the claim" and "[a]t that time," he had "again advised [Farm Bureau] that [he] did not want Farm Bureau to issue a draft as [he] still did not agree with the terms of the settlement offer by Citizens Insurance." *Id.*

On March 23, 2004, following a "meeting of 2–2–04" with Farm Bureau, Brewington sent a letter to Farm Bureau providing details of the extensive damages he had incurred after being "severely injured on 8–1–02 when an automobile driven by a Mr. Darren Hornberger turned into the path of [his] motorcycle." (App.59). Brewington's letter of March 23, 2004, further stated that "at this time," he was "agreeing to accept the $50,000 policy limit of Citizens' policy and [he was] requesting an additional amount of $250,000 under the 'Underinsured Provision' of [his] Farm Bureau policy." *Id.*

On April 2, 2004, Farm Bureau wrote Brewington and "enclosed checks which total $50,000.00 to front the underlying limits" of Hornberger's policy with Citizens. (App.62). The letter advised Brewington that Farm Bureau would "proceed with the settlement and negotiation of [his] underinsured motorist claim as provided" in his policy. *Id.*

On June 10, 2004, Farm Bureau, as subrogee of Brewington, filed an action against Hornberger. The complaint alleged that while driving his insured vehicle, Hornberger "carelessly and negligently failed to yield the right-of-way to [Brewington's] vehicle," causing Brewington to suffer damages. (App.82). The complaint further alleged that Farm Bureau was "subrogated to the rights of" Brewington and "damaged in an undetermined amount." *Id.* On August 13, 2004, Farm Bureau filed an amended complaint which specified the amount of its damages as $6,376 in property damages, $5,000 in medical expenses, and bodily injuries of $200,000 suffered by Brewington and paid by Farm Bureau, as subrogee.

On October 28, 2005, Hornberger filed a motion for summary judgment. Hornberger asserted that Farm Bureau had on November 13, 2003, received (1) "notice of the fact that Citizens tendered the limits of its insurance policy that it had with Hornberger," and therefore "knew of Citizen's bona fide settlement offer for its policy limits in the amount of $50,000"; and (2) certification of Hornberger's policy limits. (App.13). Nevertheless, Hornberger asserted, Farm Bureau "did not advance or front the $50,000 representing Citizens' policy limits to its insured, Brewington, until April 2, 2004." *Id.* Hornberger argued that these facts established that pursuant to Indiana Code section 27–7–5–6(b), Farm Bureau had waived its right of subrogation.

In its brief in opposition, Farm Bureau asserted that it was not until after it received Brewington's letter of March 23, 2004, that it had "proper written notification that there was the existence of a bona fide offer of agreement or settlement between" Brewington and Hornberger. (App.46). Farm Bureau further asserted that upon receiving this "first notification

from [Brewington] requesting that the policy limits of Hornberger be advanced," Farm Bureau advanced the policy limits of $50,000.00 on April 2, 2004, *i.e.*, within the statutory 30–day limit. *Id.*

In his reply brief, Hornberger asserted that "on November 13, 2003," Farm Bureau was "aware of Citizens' $50,000 policy limit offer on behalf of Hornberger and had received the certification of policy limits." (App.87). He asserted that the statute required only that "[t]hese two prerequisites (offer of settlement, certification of policy limits)" be met, and "then the 30–day requirement begins to run." *Id.* Hornberger also claimed that "[w]hether Brewington would accept the policy limits settlement offer is irrelevant to compliance with the statute . . . because all the statute requires is for the policy limits offer to be made." *Id.* at n. 1.

The foregoing facts were presented as designated evidence, and on July 31, 2006, the trial court heard arguments on Hornberger's summary judgment motion. On September 6, 2006, the trial court denied the motion. Subsequently, Hornberger filed a motion seeking certification thereof for interlocutory appeal, and the trial court granted his motion. Hornberger then petitioned this court to entertain jurisdiction of his interlocutory appeal, and we granted the motion and accepted jurisdiction.

## DECISION

■ When we review the appeal of a decision by the trial court to deny a motion for summary judgment, our standard of review

> is the same as that used in the trial court: summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.

*Corr v. American Family Ins.*, 767 N.E.2d 535, 537 (Ind.2002). As the party "appealing from a summary judgment decision," Hornberger has the burden of persuading us that the "denial of summary judgment was erroneous." *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 908 (Ind.2001).

Hornberger argues that the trial court erred when it denied his motion for summary judgment because the designated evidence established that Farm Bureau waived its right of subrogation. Specifically, Hornberger begins with the facts that "on November 13, 2003, Farm Bureau had been provided with written notice of 1) Citizens' settlement offer to Brewington, Farm Bureau's insured; and 2) certification of Citizens' liability coverage." Hornberger's Br. at 5. Hornberger then argues that this constitutes "a bona fide offer of agreement or settlement." *Id.* at 6. Therefore, Hornberger concludes, because Farm Bureau was aware of Citizens' offer and had in its possession certification of Hornberger's policy coverage, but Farm Bureau did not tender to Brewington payment in the amount of that coverage within the statutory thirty-day period, it waived its statutory right of subrogation. As he had argued to the trial court, Hornberger also argues on appeal that "the lack of an existent agreement to settle between Brewington and Hornberger's liability insurer is irrelevant" because what the statute requires "is notice of the existence of a bona fide *offer* of agreement." Hornberger's Br. at 12 (emphasis in original). We cannot agree with his arguments.

■ The applicable provision of statute provides as follows:

An insurer providing underinsured motorist coverage does not have a right of subrogation against an underinsured motorist if:

(1) the insurer has been provided with a written notice that
  (A) informs the insurer of the existence of a bona fide offer of agreement or settlement between its insured and the underinsured motorist; and
  (B) includes a certification of the liability coverage limits of the underinsured motorist; and
(2) the insurer fails to advance payment to the insured in an amount equal to the amount provided for in the offer of agreement or settlement within thirty (30) days after the insurer receives the notice described in subdivision (1).

Indiana Code § 27–7–5–6(b).

To interpret the meaning of the above statute, we apply statutory construction as follows.

[W]e independently review a statute's meaning and apply it to the facts of the case under review. *Bolin v. Wingert*, 764 N.E.2d 201, 204 (Ind.2002). Thus, we need not defer to a trial court's interpretation of the statute's meaning. *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 942 (Ind.2001). "The first step in interpreting any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question." *St. Vincent Hosp. & Health Care Center, Inc. v. Steele*, 766 N.E.2d 699, 703–704 (Ind.2002). If a statute is unambiguous, we must give the statute its clear and plain meaning. *Bolin*, 764 N.E.2d at 204. A statute is unambiguous if it is not susceptible to more than one interpretation. *Elmer Buchta Trucking*, 744 N.E.2d at 942. However, if a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Bolin*, 764 N.E.2d at 204. We presume the legisla-

ture intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id.* *City of Fort Wayne v. Pierce Mfg., Inc.,* 853 N.E.2d 508, 511–12 (Ind.Ct.App.2006), *trans. denied.*

We consider whether the language of the statute provides "clearly and unambiguously" what must be contained in the written notice received by the insurer. *St. Vincent Hosp. & Health Care Ctr.,* 766 N.E.2d at 704. The statute states that the notice is "of the existence of a bona fide offer of agreement or settlement between its insured and the underinsured motorist." I.C. § 27–7–5–6(b)(1)(A). Given the construction of the sentence and the use of the conjunction "or," this provision may be read in two ways. It may be read to mean either "the existence of a bona fide offer of agreement . . . between its insured and the underinsured motorist" or "a bona fide offer of . . . settlement between its insured and the underinsured motorist." *Id.* Regardless, it seems clear to us that the meaning of either reading is that the "offer of agreement" or the "offer of . . . settlement" is *"between the insured and the underinsured motorist." Id.* (emphasis added).

To read the statute as Hornberger suggests, as being "irrelevant" that there was "the lack of an existent agreement to settle between" the insured and the tortfeasor's insurer (Hornberger's Br. at 12), would render the statutory phrase "between its insured and the underinsured motorist" meaningless or for naught. I.C. § 27–7–5–6(b)(1)(A). Statutory construction requires that we "read the sections of an act together in *order that no part is rendered meaningless* if it can be harmonized with the remainder of the statute." *North Vernon v. Jennings Northwest Regional Utilities,* 829 N.E.2d 1, 4 (Ind.2005). The word "between" is defined as "involving . . . re-

ciprocal action." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 209 (1976). Thus, reading all of the words in the statutory provision requires that there must have been some reciprocal action involving *the insured* and the underinsured motorist.

■ Based on the facts in this case, the statutory "offer of agreement" or "offer of . . . settlement" would require some reciprocal action between Brewington and Hornberger—or Citizens, as offering an agreement or settlement on Hornberger's behalf pursuant to his policy of insurance with Citizens. Thus, pursuant to the statute, it was only upon Farm Bureau's receipt of Brewington's letter of March 23, 2004, that it received notice of an agreement or settlement "between" *Brewington* and Citizens that triggered the thirty-day period in which Farm Bureau was required to advance payment to Brewington. *Id.*

As detailed in FACTS, at no time before his letter to Farm Bureau dated March 23, 2004, did Brewington give notice to Farm Bureau that he was agreeing to accept the $50,000 policy limit of Hornberger's policy with Citizens. Within thirty days of that notice, Farm Bureau advanced to Brewington funds in that amount. Therefore, Farm Bureau did not suffer a statutory waiver of its subrogation rights pursuant to Indiana Code section 27–5–7–5–6(b). Accordingly, the trial court did not err when it denied Hornberger's motion for summary judgment so asserting.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.